**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DARIUS F. QUEEN # 305-181, | * |
|     Plaintiff, | * |
| v. | *   Civil No. WDQ-02-3885 |
| H. D. WARD | * |
|     Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MOTION TO DISMISS OR, IN THE ALTERNATIVE,**
**MOTION FOR SUMMARY JUDGMENT**

Defendant, Lt. H. D. Ward, by his attorneys, J. Joseph Curran, Jr., Attorney General of Maryland and Phillip M. Pickus, Assistant Attorney General, moves to dismiss this case pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim, or in the alternative, moves pursuant to Fed. R. Civ. P. 56 for summary judgment. The grounds of the Motion are:

1. The complaint fails to state a claim upon which the relief prayed can be granted.

2. There is no genuine dispute as to any material fact and Defendant is entitled to judgment in his favor as a matter of law.

3. The Defendant is entitled to qualified immunity.

WHEREFORE, defendant prays that this Court dismiss this case or award him summary judgment. In support of this Motion, the defendant submits the accompanying Memorandum of Law and Exhibits.

Respectfully submitted,

J. JOSEPH CURRAN, JR.
Attorney General of Maryland


_____/s/_____
PHILLIP M. PICKUS
Assistant Attorney General
Bar No. 22814

St. Paul Plaza - 19th Floor
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-6429
Fax (410) 576-6880

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DARIUS F. QUEEN # 305-181, | * |
| Plaintiff, | * |
| v. | *   Civil No. WDQ-02-3885 |
| H. D. WARD | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS OR IN THE ALTERNATIVE**
**<u>FOR SUMMARY JUDGMENT</u>**

Defendant, Lt. H. D. Ward, by his attorneys, J. Joseph Curran, Jr., Attorney General of Maryland and Phillip M. Pickus, Assistant Attorney General, submits this Memorandum of Law in support of his motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim, or in the alternative, pursuant to Fed. R. Civ. P. 56 for summary judgment.

**I.   <u>Introduction</u>**

Plaintiff Darius Queen is an inmate in the custody of the Maryland Division of Correction currently incarcerated at the Eastern Correctional Institution (ECI). On November 27, 2002, Queen filed this civil rights action under 42 U.S.C. § 1983. Queen alleged that on January 12, 2002 he had been the victim of an assault by other inmates, including his cellmate. Plaintiff claimed that this assault was a result of defendants' failure to protect him from harm. Plaintiff also included a claim that he did not receive proper medical care for the injuries that resulted from this assault.

On April 4, 2003, the original group of four named defendants filed a Motion to Dismiss or, in the Alternative Motion for Summary Judgment. On July 11, 2003, two newly named defendants, Sgt. Sandra Thomas and Officer Kenneth Pedersen, also filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. On October 28, 2003, this Court issued a Memorandum and Order granting in part and denying in part defendants' Motion for Summary Judgment. This Court granted summary judgment for all defendants except for Lt. H.D. Ward. This Court also granted summary judgment on the medical care claim and only allowed the failure to protect claim to proceed against Lt. Ward. This Court than issued a Scheduling Order addressing, among other things, discovery and the filing of dispositive motions. Discovery has now been completed.

**II.     Factual Background**

On December 28, 2001, plaintiff put in a request slip asking to be moved out of his cell because he was having problems with his "celly." (*See* Exhibit No. 1, Request Slip). Defendant, Lt. H. D. Ward addressed this request on January 4, 2004, his first day back to work after the request was made. (*See* Exhibit No. 2, Cell Change Interview Record). Lt. Ward and Sgt. Sandra Thomas interviewed plaintiff and plaintiff informed them that he had not been threatened and was not in fear for his life. *Id*. Instead, plaintiff indicated the reason he wanted to be transferred was so that he could move in with a friend. Lt. Ward and Sgt. Thomas signed a Cell Change Interview Record but plaintiff refused to sign the form. *Id*. Plaintiff contends this interview never occurred. On January 12, 2002, plaintiff was

assaulted by his cellmate, Kevin Barnes, and two other inmates. This assault occurred in the recreation room for Housing Unit 1, tier C.

On August 19, 2004, the deposition of defendant Lt. H.D. Ward was taken at ECI. (*See* Exhibit No. 3, excerpts of Deposition of Lt. H.D. Ward). Lt. Ward indicates that he did interview plaintiff on January 4, 2002 regarding the cell change request. *Id*. at p. 95. Lt. Ward testified that plaintiff never told him that he had been threatened or was in fear for his life. *Id*. at p. 96. When asked what he remembered about this interview, Lt. Ward replied as follows:

> Just that he [plaintiff] was, wanted to move. I think, I am not positive, I think it was cell 45 and he wanted to move down there with a friend. And we, just wasn't going to happen that day. He didn't meet the requirements for a move. Then he got a little loud, and so I did the cell change interview sheet.

*Id*. at p. 98-99. Lt. Ward indicated that while not completely certain about the number, the cell plaintiff wanted to move to was "right down the hall, and he wanted to move in with a friend is what he told me." *Id*. at p. 100. Lt. Ward testified that plaintiff refused to sign the Cell Change Interview Form so Lt. Ward and Sgt. Sandra Thomas, who had also been present for most of the interview, signed the form. *Id*. at p. 113-114.

The deposition of Sgt. Sandra Thomas was also taken on August 19, 2004, at ECI. (*See* Exhibit No. 4, excerpts of Deposition of Sgt. Sandra Thomas). Sgt. Thomas testified that she was present for a portion of Lt. Ward's interview of plaintiff on January 4, 2002. *Id*. at p. 48. Sgt. Thomas testified that she never heard plaintiff tell Lt. Ward that he had been

3

threatened or was in fear for his life. *Id*. at p. 48. When asked what explanation plaintiff gave for wanting to move, Sgt. Thomas replied that plaintiff "wasn't getting along with his cell buddy, and there was this fella he knew or something, in Cell 45, that he wanted to move in with, but at the time, I don't believe, if I recall that the cell was available for him to move into." *Id*. at p. 39. When asked if she thought the fact plaintiff and his cellmate weren't getting along constituted a threat, Sgt. Thomas replied "[w]ell, if it's a threat, why would you want to move a few doors down? I would want to get off that tier, wouldn't you?" *Id*. at p. 33. The reason Sgt. Thomas thought plaintiff would want to get off the tier if his cellmate had threatened him is because inmates on the same tier eat together, have recreation together, and go to the courtyard together, which, in essence, meant that his cellmate could "get him any time he wanted." *Id*. at p. 56.

Plaintiff was deposed on September 9, 2004. (*See* Exhibit No. 5, excerpts of Deposition of Darius Queen). Plaintiff acknowledged that his cellmate never made a more specific threat then "there's going to be trouble." *Id*. at p. 41. Although plaintiff denies that the January 4, 2002 cell change interview ever occurred, he does admit that "when I made the request, I noticed that that cell was open because the older guy had told me, a friend had told me. He was like, 'there's a specific cell open, why don't you try to get in that cell.' I'm going to move into that cell because it's open." *Id*. at p. 57. When asked what cell he was referring to, plaintiff replied "cell 45." *Id*. at p. 57.

4

### III. Argument

#### A. Plaintiff's Complaint Should Be Dismissed

The only viable claim now remaining in this case is plaintiff's assertion that he was not properly protected from an assault committed by his cellmate, Kevin Barnes, and two other inmates at ECI. A Prisoners' right to be free from cruel and unusual punishment does include the right to be protected from a substantial risk of serious harm at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Winfield v. Bass*, 106 F.3d 525, 531 (4th Cir. 1997); *Belcher v. Oliver,* 898 F2d 32, 34 (4th Cir. 1990). However, not "every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. A cause of action for failure to protect an inmate from harm arises only where prison officials have been deliberately indifferent to a known risk of harm. The negligent failure to protect an inmate from harm is not actionable, and complaints which do not allege deliberate indifference to a known risk of harm fail to state a claim. *See also Ruefly v. Landon*, 825 F.2d 792, 793 (4th Cir. 1987); *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "[T]he protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." *Davidson v. Cannon*, 474 U.S. 344, 348 (1986)(negligent failure to protect from assault by other inmate not actionable).

As in other Eighth Amendment contexts, a failure to protect claim involves an objective and a subjective component. To satisfy the objective component, the inmate must

show that the harm he suffered was serious. *Farmer*, 511 U.S. at 834. He must also show that prison officials were deliberately indifferent to a substantial risk that such harm would occur, *i.e.*, that officials consciously disregard a substantial risk of serious harm. *Id*. Deliberate indifference in this context means that the defendant "knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Id*. at 837. Unless the defendant actually drew the required inference, he did not act with deliberate indifference even where his actions violated prison regulations and could be described as negligent, stupid or lazy. *Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

     Lt. Ward and Sgt. Thomas testified that they interviewed plaintiff and plaintiff did not indicate he had been threatened or was in fear for his life. (*See* Exhibit No. 3, at p. 96; Exhibit No. 4, at p. 48). Plaintiff, on the other hand, denies this interview ever took place. Even if it is assumed that plaintiff is correct and this interview did not take place, plaintiff's claim must fail. If this interview did not take place, the only communication to Lt. Ward that plaintiff wanted to transfer cells was the December 28, 2001 Request Slip. (*See* Exhibit No. 1). This request slip merely indicates that plaintiff and his cellmate were not getting along and there would be "trouble" if plaintiff was not moved. *Id*. Sgt. Thomas indicated that this request slip did not constitute a threat (*see* Exhibit No. 4, at p. 41) and Lt. Ward indicated he did not believe there was any reason to move plaintiff (*see* Exhibit No. 3, at p. 96-99).

6

Since Lt. Ward did not believe there was a threat, he could not have drawn the required inference that plaintiff was in danger. Even if this Court believes Lt. Ward should have with made this inference under the circumstances, it must be proven that Lt. Ward actually made such an inference. This is true even if the failure to draw the inference constituted negligence or incompetence. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986)(negligent failure to protect from assault by other inmate not actionable); *Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997)(Unless the defendant actually drew the required inference, he did not act with deliberate indifference even where his actions violated prison regulations and could be described as negligent, stupid or lazy). A further examination of the deposition testimony, however, will show that not only did Lt. Ward not draw an inference of a threat, but it was perfectly reasonable not to do so.

The fact that Lt. Ward did not and should not have drawn an inference of a threat is evident from plaintiff's admitted desire to move into a cell on his same tier. Both Lt. Ward and Sgt. Thomas indicated that plaintiff told them that he was not in fear of his life and simply wanted to move to a cell down the hall with a friend. (*See* Exhibit No. 3, at p. 96-99; Exhibit No. 4, at p. 39). They both believed the cell plaintiff wanted to move to was cell 45. *Id*. More importantly, plaintiff himself admits that he noticed cell 45 on his tier was open and a friend had told him to try to get placed in cell 45. (*See* Exhibit No. 5, at p. 57-59). If plaintiff had been moved to cell 45, he still would have taken meals and recreation at the same time and in the same areas as Kevin Barnes. (*See* Exhibit No. 4, at p. 56). Plaintiff

7

testified that he was aware of this fact. (*See* Exhibit No. 5, at p. 25, 30). Plaintiff's interest in cell 45, therefore, demonstrates that plaintiff himself did not feel a substantial threat from Kevin Barnes. If plaintiff himself did not feel threatened, Lt. Ward certainly could not have drawn the inference of a threat.

The fact that plaintiff wanted to move to a cell on his same tier is important for a second reason. Even if plaintiff had gotten exactly what he had requested, a transfer to cell 45 on his tier, this assault would still have occurred. This assault occurred in the recreation room while tier C of housing unit 1 was having recreation time. (*See* Exhibit No. 5, at p. 63). If plaintiff had been moved to cell 45, he and Kevin Barnes would still have had recreation together and this assault still would have occurred. Plaintiff may argue that Lt. Ward should have moved plaintiff off the tier in order to avoid the possibility of an assault in the recreation room. Yet, Lt. Ward could not be expected to know there was reason to move plaintiff off the tier when plaintiff himself did not believe there was reason to be moved off the tier. The depositions in this case establish that Lt. Ward did not draw the actual inference that there was a threat to plaintiff's safety and the failure to make such an inference was reasonable under the circumstances.

**B.     The Defendant is Entitled to Summary Judgment**

The defendant is entitled to summary judgment in his favor. Summary judgment is appropriate,

> if the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show that

8

> there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

F.R.Civ. P. 56(c). Summary judgment should be entered even where there may be some factual disputes, so long as under the applicable law they are not material facts:

> [B]y its very terms, [the summary judgment] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Summary judgment should be granted "where the evidence is such that it 'would require a directed verdict for the moving party.'" Id. 477 U.S. at 251. Where the moving party shows that the non-moving party will not be able to establish an essential element of his claim, summary judgment is appropriate. *See Celotex Corporation v. Catrett*, 477 U.S. 317 (1986). *See Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998).

    **C.**    **The Defendant is Entitled to Qualified Immunity**

The defendant is entitled to summary judgment on the basis of qualified immunity. Under the facts as established on the current record in this case, the defendant did not violate any clearly established constitutional right of which a reasonable public official should have known. Thus, he is entitled to qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Turner v. Dammon*, 848 F.2d 440, 443 (4th Cir. 1988); *Young v. Lynch*, 846 F.2d 960, 963 (4th Cir. 1988). Under the standard articulated in *Harlow*, whether prison officials are entitled to summary judgment based on

9

qualified immunity turns on the "objective reasonableness of the action, assessed in light of the legal rules that were 'clearly established at the time the action was taken.'" *Harlow v. Fitzgerald*, 457 U.S. at 818.

Once the defense of qualified immunity is raised, the burden is on the plaintiff to show that the defendant's conduct violated the law and that such law was clearly established when the alleged violation occurred. *Bryant v. Muth*, 994 F.2d 1082, 1086 (4th Cir.), *cert. denied*, 510 U.S. 996 (1993). The plaintiff must demonstrate that "in light of the pre-existing law, the unlawfulness of the official action was apparent." *Bryant*, 994 F.2d at 1086, *citing Mitchell v. Rice*, 954 F.2d 187, 190 (4th Cir.), *cert. denied*, 506 U.S. 905 (1992). Queen cannot meet this burden.

Given the facts and the law as set forth above, even if plaintiff had stated a claim, the defendant did not violate "clearly established" legal rules in any way. Plaintiff was not the victim of deliberate indifference to his safety.

**IV.   Conclusion.**

The defendant respectfully request that this Court dismiss this case or enter summary judgment in his favor.

    Respectfully submitted,

    J. JOSEPH CURRAN, JR.
    Attorney General of Maryland

                                        _____
PHILLIP M. PICKUS
Assistant Attorney General
Bar No. 22814

St. Paul Plaza - 19th Floor
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-6429
Fax (410) 576-6880

Attorneys for Defendant

E-MSJ.wpd