IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DARIUS F. QUEEN, #305-181 | * | |
| Plaintiff, | * | |
| v. | * | Civil No. WDQ-02-3885 |
| H.D. WARD | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANT'S PROPOSED FINDINGS
OF FACT AND CONCLUSIONS OF LAW**

Defendant, H.D. Ward, by his attorneys, J. Joseph Curran Jr., Attorney General of Maryland, and Phillip M. Pickus, Assistant Attorney General, pursuant to this Court's Order dated June 13, 2005, submits the following proposed findings of fact and conclusions of law and states:

**I.   Findings of Fact**

1.   From December 23, 2001 to January 12, 2002, Plaintiff was incarcerated at the Eastern Correctional Institution (ECI), in housing unit 1, tier C, cell 38.

2.   Plaintiff's incarceration is the result of a conviction for second degree burglary.  During the past ten (10) years Plaintiff also has convictions for car theft, unauthorized use, and escape.

3.   During December of 2001 and January of 2002, Defendant was employed by the Maryland Division of Correction (DOC) as a Lieutenant at ECI

assigned to housing unit 1. Defendant has been employed by the DOC as a Correctional Officer for over seventeen (17) years.

4. Defendant's job evaluations from 1999 to 2004 have been outstanding.

5. Sandra Thomas is employed by the DOC as a Sergeant. During December of 2001 and January of 2002, Sgt. Thomas was assigned to housing unit 1. Sgt. Thomas has been employed by the DOC for twelve (12) years.

6. Kenneth Pedersen is employed by the DOC as a Correctional Officer II. During December 2001 and January 2002, Officer Pedersen was assigned to housing unit 1. Officer Pedersen has been employed by the DOC for twelve (12) years.

7. While Plaintiff was incarcerated in housing unit 1, tier C, cell 38, his cellmate was Kevin Barnes.

8. If a cell change request at ECI involves issues of safety, any ECI officer may begin the cell change process. If a cell change is for the inmate's convenience rather than safety, the request must be handled by the housing unit Lieutenant. An inmate must be in a cell for six (6) months with no infractions to be eligible for a non-safety transfer.

9. If an inmate is transferred out of a cell for safety reasons, he is temporarily placed in segregation until a new housing assignment can be determined.

10. Plaintiff has an aversion to being placed on segregation.

11. Prior to December 28, 2001, Plaintiff verbally indicated to Officer Kenneth Pedersen and Sgt. Sandra Thomas that he was having "problems" with his cellmate. Neither Officer Pedersen or Sgt. Thomas believed Plaintiff was at risk of harm and they did not begin the cell change process. Instead, Plaintiff was directed to make a written request to Defendant.

12. On December 28, 2001, Plaintiff submitted a Request Slip that read as follows: "I am in 38 and would like to move to 45 because me and my celly are not getting along from the time I moved in. He has told me that there will be trouble unless I move out. Thank you."

13. Inmates housed in cell 38 and 45 of housing unit 1, C tier would eat together, have recreation, and shower together.

14. Ellis Hickman is an ECI inmate who was friendly with Plaintiff. Mr. Hickman indicated he heard other inmates discussing an assault on Plaintiff prior to Plaintiff making the written cell change request. Mr. Hickman also indicated that Plaintiff and Kevin Barnes had religious differences.

15. Defendant and Sgt. Sandra Thomas indicated they did not believe that the word "trouble" meant Plaintiff was at risk of harm. This was especially true given the fact that Plaintiff wanted to move to cell 45 on the same tier where he would be in the presence of Mr. Barnes for significant periods of time.

16. Plaintiff never indicated to Defendant, Officer Pedersen or Sgt. Thomas that Kevin Barnes had threatened him.

17. Defendant, Sgt. Thomas and Officer Pedersen have a combined forty-one (41) years of correctional experience. All three believed that the word trouble coupled with Plaintiff's desire to remain on the same tier indicated that Plaintiff was not at risk of harm.

18. Plaintiff's December 28, 2001 request slip was not handled until January 4, 2002 because there was no staff at ECI who believed Plaintiff was in danger.

19. On December 28, 2001, Defendant was on leave and was not working at ECI. On December 29, 2001, Defendant was on leave but went to ECI for three (3) hours. Defendant was off and did not go to ECI on December 30 and 31 of 2001 and January 1 of 2002. Defendant was working on January 2nd, 3rd and 4th of 2002.

20. Defendant received between 8 and 40 cell change requests per day. These requests would be both verbal and written.

21. Many DOC and ECI inmates attempt to manipulate their housing assignments through the cell change request process.

22. Defendant's duties include processing cell change requests to weed out the frivolous requests from the legitimate requests.

23. If Defendant receives a cell change request that he believes could be a legitimate safety concern, he conducts an interview. During these interviews, Defendant uses a form entitled "Cell Change Interview Record." Included on this form are the following three (3) questions: "A. Have you been threatened?; B. Are

4

you in fear for your life?; and C. Do you want protective custody?"

24. Defendant did not become aware of Plaintiff's cell change request until January 4, 2002.

25. Plaintiff's cell change request was one of many requests that Defendant addressed on January 4, 2002. Defendant decided to interview all of the inmates who had made the written cell change requests that he was reviewing on January 4, 2002.

26. Defendant interviewed Plaintiff on January 4, 2002 in Defendant's office. Plaintiff, Defendant and Sgt. Sandra Thomas were the only people present for this interview.

27. During the cell change interview, Plaintiff told Defendant that he wanted to move in with a friend in cell 45 on the same tier. Because this was not proper grounds for a transfer, Defendant denied Plaintiff's transfer request. At this point, Plaintiff became angry. Plaintiff began to yell and use derogatory language.

28. Due to Plaintiff's behavior, Defendant decided to use the Cell Change Interview Record during this interview. Defendant asked Plaintiff the three questions listed on the Cell Change Interview Record. Plaintiff replied "no" to all three questions.

29. Plaintiff at no time during the cell change interview indicate that he was in danger.

30. Defendant at no time believed Plaintiff was in danger.

31. Plaintiff refused to sign the Cell Change Interview Record. Defendant and Sgt. Sandra Thomas signed the form.

32. Plaintiff has another incident at ECI where he refused to sign a money voucher.

33. After the cell change interview on January 4, 2002, Plaintiff remained in cell 38, C tier, housing unit 1. Plaintiff made no further communications regarding any problems with Kevin Barnes.

34. On January 12, 2002, Plaintiff was assaulted by Kevin Barnes and other ECI inmates. The assault took place in the recreation room for housing unit 1, tier C, not in cell 38.

35. Defendant conducted an investigation into the January 12, 2002 altercation involving Plaintiff and Kevin Barnes. Based on this investigation, on January 13, 2002, Defendant wrote Kevin Barnes a Notice of Inmate Rule Violation and Disciplinary Hearing.

36. On January 16, 2002 a hearing was conducted regarding Kevin Barnes' infraction. Hearing Officer Sanstrom, relying on Defendant's report, found Mr. Barnes guilty. Mr. Barnes received a sanction of ninety (90) segregation days as a result of this infraction.

37. Defendant was the officer primarily responsible for investigating the assault on Plaintiff and issuing an infraction to Kevin Barnes.

## II.     Conclusions of Law

38.     Based on his history of theft related crimes, Plaintiff's veracity is questionable.

39.     The word "trouble" in Plaintiff's December 28, 2001 request slip is ambiguous as to whether or not Plaintiff was in danger.

40.     Plaintiff's indication in the December 28, 2001 Request Slip that he wanted to be moved to a specific cell (45) on the same tier as Barnes indicates Plaintiff was not in fear of Kevin Barnes and was motivated to ask for a cell change for other reasons.

41.     Due to the ambiguous term "trouble" and his request to move to cell 45 on the same tier, Plaintiff's communications with Defendant or any other ECI officer was that he was not fear of Kevin Barnes.

42.     Plaintiff's December 28, 2001 request slip did not give Defendant knowledge that Plaintiff was in danger or place Defendant on notice of any danger.

43.     Based on the testimony of Defendant, a Lieutenant with seventeen (17) years of experience and who has received only outstanding evaluations the last five (5) years, and Sgt. Sandra Thomas, it is clear a cell change interview was conducted with Plaintiff on January 4, 2002.

44.     In the only two communications he had with Defendant, the December 28, 2001 written request slip and the January 4, 2002 interview, Plaintiff did not communicate that he was in danger.

45.  Plaintiff purposely used ambiguous language in his cell change request and failed to claim an actual threat because he did not want to be moved off of tier C and he did not want to be placed in segregation.

46.  Since the assault occurred in the tier C dayroom and not in cell 38, Plaintiff would have been assaulted by Kevin Barnes even if he had been transferred to cell 45 on tier C.  Plaintiff and Barnes would still have eaten together and would have had recreation together.  According to Mr. Hickman, the assault was already being planned and the differences between Plaintiff and Barnes went beyond sharing a cell and included religious differences.

47.  Defendant did not "know of and disregard an excessive risk to [Plaintiff's] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

48.  Defendant did not draw an inference that there was a substantial risk of harm to Plaintiff.

49.  Defendant did not "actually perceive a risk" to Plaintiff's health or safety. *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997).

50.  Defendant's actions in regard to Plaintiff's cell change request were reasonable and did not rise to the "very high standard" of deliberate indifference to a substantial risk of harm. *Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) *quoting Grayson v. Peel*, 195 F.3d 692, 695 (4th Cir. 1999).

                                      Respectfully submitted

                                      J. JOSEPH CURRAN
                                      Attorney General of Maryland

                                      _____/s/_____
                                      PHILLIP M. PICKUS
                                      Assistant Attorney General
                                      Bar No. 22814

                                      St. Paul Plaza - 19th Floor
                                      200 Saint Paul Place
                                      Baltimore, Maryland 21202
                                      (410) 576-6429 (Telephone)
                                      (410) 576-6880 (Telefax)

                                      Attorneys for Defendant

Electronically filed: July 11, 2005