**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DARIUS F. QUEEN # 305-181, | * |
| Plaintiff, | * |
| v. | *   Civil No. WDQ-02-3885 |
| H.D. WARD | * |
| Defendant. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Defendant, H.D. Ward, by his attorneys, J. Joseph Curran, Jr., Attorney General of Maryland, and Phillip M. Pickus, Assistant Attorney General, pursuant to this Court's Order dated June 13, 2005, submits the following Response to Plaintiff's Proposed Findings of Fact and Conclusions of Law and states:

**Argument**

In his Proposed findings of facts and Conclusions of Law (paper 94), plaintiff argues that Defendant Lt. Ward was subjectively aware of a substantial risk to plaintiff's safety. (*See* paper 94, at pp. 10-12). Plaintiff asserts that his December 28, 2001 written cell change request notified defendant of "continued threats of 'trouble.'" *Id*. at p. 10. At no time during these proceedings, however, did plaintiff articulate an actual physical threat that he received from Kevin Barnes. Plaintiff's use of the word "trouble" in the cell change request form is

ambiguous as to whether plaintiff was in physical danger. When this ambiguity is coupled with plaintiff's request to move to cell 45 on the same tier where he would still have significant contact with Kevin Barnes, it is clear plaintiff was not in fear of Kevin Barnes. More importantly, regardless of whether plaintiff was in fear of Barnes, the coupling of the word "trouble" with a request to remain on the same tier did not communicate to the defendant that plaintiff was in danger. Defendant testified that he did not believe plaintiff's cell change request indicated a safety risk to plaintiff. Sgt. Sandra Thomas and Officer Kenneth Pedersen came to the same conclusion.

Plaintiff's ambiguous cell change request was not an accident. Plaintiff was walking a fine line in which he was attempting to maneuver a cell change to a cell on the same tier without activating the mechanisms required for safety transfers. It is clear that plaintiff is articulate and capable enough to effectively identify specific physical threats in writing in his cell change request. Plaintiff chose not to do this, however, because it would mean he would be moved off the tier and it is clear he wanted to remain on that particular tier. If plaintiff had listed specific threats, it would also mean a temporary stay on segregation. In order to avoid these consequences, plaintiff merely tried to hint at problems to manipulate a cell change instead of listing actual problems and instigating a full safety transfer. In any case, whatever the motivation, the bottom line is plaintiff did not communicate to defendant that he was at risk of harm.

Plaintiff argues that he would have had no problems with Kevin Barnes if he had simply been moved out of cell 38 to a cell on the same tier. (*See* paper 94, at p. 12). Ellis Hickman, however, indicated that the problems between Plaintiff and Barnes went beyond living together and included religious differences. Whatever plaintiff's belief was in this regard, it is absurd to suggest that defendant would have complied with his duties by moving plaintiff to a cell on the same tier as Kevin Barnes. All of the correctional officers that testified at trial indicated that when there is a safety transfer, the at-risk inmate must be moved to a new housing unit so that there is no contact with the threatening inmate. If Lt. Ward was aware of a risk of harm to plaintiff and had moved plaintiff to cell 45 on the same tier, then he truly would have been guilty of deliberate indifference. But Lt. Ward did not move plaintiff at all because he did not believe there was a safety risk and this belief was in part due to the very fact that plaintiff requested to remain on the same tier.

Plaintiff next claims that defendant fabricated the January 4, 2002 interview form to make it appear that he interviewed plaintiff. Plaintiff's implication is that defendant and Sandra Thomas were outright lying when they testified that a cell change interview with plaintiff took place on January 4, 2002. In this regard, plaintiff, an inmate with a prior incident of refusing to sign institutional forms and with three theft-related convictions in the past ten years, argues he should be believed over two correctional officers, one of whom, defendant, has received nothing but outstanding performance reviews during the past five

3

years. It is hard to imagine such a callous fabrication on the part of these two correctional professionals.

Plaintiff points to the Cell Change Interview Record itself as proof of Lt. Ward and Sgt. Thomas' fabrication. (*See* paper 94, at p. 7). Plaintiff points to the fact that the phrase "inmate Basefile" is crossed out on some forms and not others. *Id.*, at p. 6. Plaintiff's arguments in this regard are much to do about nothing. Defendant testified he did not personally cross out this phrase, that he does not know why the phrase is marked, and that it is crossed out on some forms and not others. If one examines the forms included in plaintiff's Trial Exhibit No. 3, it is clear that the forms from 2003 and 2004, presumably when defendant would have attempted to manufacture this interview, the phrase inmate basefile is not crossed out as it is on plaintiff's interview sheet. The only thing that is clear from these trivialities is that there are slight differences between these forms but no conclusions can be drawn as to the time they were in use.

The more important question regarding plaintiff's assertions of the fabricated form is what relevance does it actually have to a determination in this case. While the evidence clearly demonstrates the interview did occur, even if plaintiff is believed and there was no cell change interview, there still is no showing of deliberate indifference. If the interview did not occur, then the only communication between plaintiff and defendant was the December 28, 2001 cell change request. As has been previously argued, this request was ambiguous at best and cannot be said to have communicated a threat of harm.

The Supreme Court has found that an officer who simply forgot to read a note regarding an inmate who had been actually threatened was not deliberately indifferent to inmate safety. *Davidson v. Cannon*, 474 U.S. 344 (1986). The Fourth Circuit has gone even further and held that actions that can be described as negligent, stupid or lazy do not amount to deliberate indifference. *Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997). Lt. Ward's conduct was far from the doleful acts found not to constitute deliberate indifference in these cases. In fact, Lt. Ward's behavior was reasonable and appropriate. In any case, the evidence in this case demonstrates that Lt. Ward did not engage in deliberate indifference.

    Respectfully submitted

J. JOSEPH CURRAN
Attorney General of Maryland


_____/s/_____
PHILLIP M. PICKUS
Assistant Attorney General
Bar No. 22814

St. Paul Plaza - 19th Floor
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-6429

Filed July 18, 2005    Attorneys for Defendant