IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND, NORTHERN DIVISION

DARIUS F. QUEEN, #305-181          :

    V.          :          CIVIL NO. WDQ 02-3885

H.D. WARD          :

MEMORANDUM

Plaintiff Darius Queen sued defendant Lt. H.D. Ward for failing to protect him from assault by a fellow inmate. For the reasons stated below the Court will enter judgment for defendant Ward.

THE EVIDENCE

The Plaintiff's Version

At trial, Plaintiff Darius Queen testified that he is serving a nine year prison sentence for burglary. Tr. At 8. In November 2001, he was sent to the Eastern Correctional Institution ("ECI"). *Id*. at 11. On December 22, Queen was moved to Housing Unit 1. *Id*. at 13. When he entered Cell C-38, its occupant, Kevin Barnes, told Queen "[Y]ou can't come in the room with your shoes on." *Id*. at 14. Queen told Correctional Officer Kenneth Pedersen who informed his superior, Sergeant Sandra Thomas. *Id*. at 15 and 30. The sergeant gave Queen the choice to re-enter the cell or be housed in a lockdown unit. *Id*. Because Queen did not want to receive an infraction for refusing housing, he entered the cell but refused to remove his shoes. *Id*. at 16. A day or two later, Barnes told Queen that there would be trouble[1] if Queen did not move out of the cell. *Id*. at 17.

---

[1] Ellis Hickman, a 62 year old, former fellow inmate of Queen, testified that Queen's difficulties with Barnes were part of ongoing conflicts at ECI between Christian and Islamic inmates. Tr. at 60.

Queen reported these threats to Pedersen at least three times. *Id*. at 18. Pedersen told Queen that if he wanted to change cells, he would have to submit a request form to defendant ECI Lieutenant Dennis Ward. *Id*. On December 28, Queen submitted a request form that said: "I am in 38 and would like to move to 45 because me and my celly are not getting along from the time I moved in. He has told me that there will be trouble unless I move out." Exhibit ("Ex.") 14.

On December 29, the request form was returned with the word "No" written on it. Tr. at 23 and Ex 14. Queen had not spoken to defendant Ward. Tr. at 23. Queen continued to receive daily threats from Barnes. *Id*. at 24.

On January 12, 2002, while Queen was playing pinochle in the Rec Hall, Barnes and two other inmates attacked him. *Id*. at 25. Queen informed Pedersen that he had been injured in a fall in the shower. *Id*. at 27. Queen was treated for a broken jaw; his jaw was wired shut for two months. *Id*. at 29. Queen testified that he had not met with or spoken to defendant Ward before the assault. *Id*. at 30.

The Defendants' Version

At trial, Sgt. Thomas testified that Queen had told her that he wanted to change cells. *Id*. at 84. Although Queen told her that he and his "cell buddy" were not getting along and had indicated on this request form that there would be "trouble" if he was not moved, she did not think that he was in fear for his safety. *Id*. at 84-88. She informed Queen how he could request a "convenience" move from defendant Ward. *Id*. at 86. She testified that when Ward returned from vacation, they met with Queen and reviewed his request for a cell change. *Id*. at 89. During that January 4, 2002, interview, Queen denied that he had been threatened or feared for his life and declined protective custody. *Id*.

and Ex. 1. When Ward informed Queen that he could not have a cell change, Queen became upset and refused to sign the Cell Change Interview record. Tr. at 91.

At trial defendant Ward testified that although he was on vacation during the week of December 28, 2001, he actually worked three hours on December 29, 2001. *Id*. at 125. On January 4, 2002, he reviewed the request form Queen had submitted on December 28, 2001. *Id*. at 127-128. Ward did not think that Queen's reference to "trouble" indicated that Queen had been threatened by Barnes. *Id*. at 128. Also on January 4, Ward conducted a number of cell change interviews. *Id*. at 129. Queen "had only been in the unit a couple of weeks and . . . wanted to move in with a friend[;]" Perceiving no threat, Ward declined Queen's request for a cell change.

## DISCUSSION

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To state an Eighth Amendment, failure-to-protect claim against a prison official, a plaintiff must allege (1) a sufficiently serious injury, and (2) that official's "deliberate indifference" to a substantial risk of serious harm. *Farmer*, 511 U.S. at 828.

A prison official is not liable under the Eighth Amendment unless he knows of and disregards an excessive risk to inmate health or safety; he must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*. at 837. An official's failure to alleviate a significant risk that he should have perceived--but did not--does not violate the Eighth Amendment. *Id*. at 838.

The first element of Queen's Eighth Amendment claim is present: his injury is sufficiently serious. Evaluating the second element of that claim requires the resolution of sharply conflicting factual

3

accounts.

Queen insists that he requested a cell change on December 28, 2001, and the request was denied on December 29, 2001 without any investigation by Ward. Queen also denies having any direct contact with Ward until after the January 12, 2002 attack.

Ward insists that the cell change request sat in his inbox until he denied it on January 4, 2002, when Queen–in an interview with Ward and Thomas–denied that he had been threatened or needed protective custody. Under Ward's version, he had no reason to perceive–and, in fact, did not perceive--that Queen was in any danger.

The resolution of the credibility contest is complicated somewhat by Exhibits 1, 2, 3 and 4. Exhibit 1 is a cell Change Interview Record purportedly completed on January 4, 2002 when defendant Ward interviewed Queen and other inmates who had requested cell changes. The form contains a line through the words "Inmate Basefile." That artifact is missing from Exhibit 2 (the Cell Change Interview Record for Kevin Barnes) and Exhibit 3 (130 Cell Change Interview Records from July 24, 2001 to June 15, 2004). The artifact is contained in Exhibit 4 (a blank Cell Change Interview Record apparently faxed from the ECI Warden's Office to Queen's counsel on April 2, 2004). Queen contends that the presence of the artifact on only two forms is proof that Exhibit 1 was generated after January 4, 2002 and supports his testimony that he was not interviewed on that date. The defendant offers no explanation for the artifact and its absence from Exhibits 2 and 3.

The Court accepts Sgt. Thomas's testimony that she concluded that Queen's health and safety were not threatened by Barnes's conduct on December 28 and Queen's subsequent allusions to disagreements with his "cell buddy." Moreover, Queen's refusal of her offer of segregated housing

4

suggests that her conclusion was reasonable.

With respect to whether there was a meeting between Queen and Ward on January 4, 2002, the Court has no idea who is telling the truth. This equipoise means that the plaintiff has failed to carry his burden of proof. As Queen has failed to prove that the defendant knew of and disregarded an excessive risk to his health and safety, judgment must be entered for the defendant.


Date: <u>August 22, 2005</u>                                 _____/s/_____
                                                                                William D. Quarles, Jr.
                                                                                 United States District Judge